## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | |
|---|---|
| DON HOSKINS, | |
| Plaintiff, | |
| v. | CAUSE NO.: 1:21-CV-469-TLS-SLC |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

## OPINION AND ORDER

The Plaintiff Don Hoskins seeks review of the final decision of the Commissioner of the Social Security Administration denying his applications for disability insurance benefits and supplemental security income. For the reasons set forth below, the Court finds that substantial evidence supports the ALJ's decision and that there is no basis to remand for further review.

## PROCEDURAL BACKGROUND

On December 30, 2014, the Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability beginning on July 18, 2014. AR 15, ECF No. 11. After the claims were denied initially and on reconsideration, the Plaintiff requested a hearing, which was held before the ALJ on February 8, 2017. AR 15, 175. On May 31, 2017, the ALJ issued a written decision, finding the Plaintiff not disabled, and the Appeals Council denied review. AR 1–5, 15–28. The Plaintiff brought a civil action, and the Court remanded the case to the Commissioner for further proceedings. AR 898–907. On remand, a new hearing was held, and the ALJ, consolidating the Plaintiff's applications with a subsequent claim filed in January 2018, issued a new decision dated October 30, 2019, finding the Plaintiff not disabled. AR 756–73. The Appeals Council denied review. AR 743–45. Thus, the ALJ's decision is the final

decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). The

Plaintiff now seeks judicial review under 42 U.S.C. § 405(g). On December 20, 2021, the

Plaintiff filed a Complaint [ECF No. 1] in this Court, seeking reversal of the Commissioner's

final decision. The Plaintiff filed an opening brief, the Commissioner filed a response brief, and

the Plaintiff filed a reply brief. ECF Nos. 13, 15, 16.

## THE ALJ'S DECISION

For purposes of disability insurance benefits and supplemental security income, a

claimant is "disabled" if he is unable "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[1] To be found disabled, a

claimant must have a severe physical or mental impairment that prevents him from doing not

only his previous work, but also any other kind of gainful employment that exists in the national

economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); 20

C.F.R. § 404.1505(a). An ALJ conducts a five-step inquiry to determine whether a claimant is

disabled. 20 C.F.R. § 404.1520.

The first step is to determine whether the claimant is no longer engaged in substantial

gainful activity. *Id.* § 404.1520(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff had not

engaged in substantial gainful activity since July 18, 2014, the alleged onset date. AR 759. At

step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R.

§ 404.1520(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe impairments

of major depressive disorder, trochanteric bursitis, congenital leg length discrepancy, hip

---

[1] The Court cites the disability insurance benefits statutes and regulations, which are largely identical to those applicable to supplemental security income. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

deformity from previous slipped capital femoral epiphysis, lumbar and lower thoracic spine degenerative changes, bilateral hand numbness with some paresthesias most consistent with carpal tunnel syndrome (CTS), generalized anxiety disorder, arthritis, lumbosacral neuritis, neuropathy of the bilateral upper extremities, and alcohol use disorder. AR 759.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in [appendix 1 to subpart P of part 404 of this chapter]." 20 C.F.R. § 404.1520(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. § 404.1520(a)(4)(iii), (d). The ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing. AR 761.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except never climbing ladders, ropes, scaffolds, ramps and stairs; occasionally balancing, stooping, kneeling, crouching, and crawling; occasional twisting and turning; frequent handling and fingering; must avoid extreme heat and cold; must avoid slippery and uneven surfaces and unprotected heights; must avoid hazards such as dangerous moving machinery; needs a cane for ambulation; able to understand, carry out, and remember simple, routine, and repetitive tasks not at assembly-line type production rate pace with only occasional, simple work-related decisions required; could have occasional interaction with supervisors apart from what is necessary for general instruction, task completion, or training; could have occasional interactions with coworkers and the general public; changes should occur no more than occasionally and be gradually introduced; could perform frequent overhead reaching; avoid

3

concentrated exposure to vibrations; allows for a sit/stand option with no greater frequency than every 15 minutes.

AR 763.

The ALJ then moves to step four and determines whether the claimant can do his past relevant work in light of the RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (f). In this case, the ALJ found that the Plaintiff is unable to perform any past relevant work. AR 771. If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g). Here, the ALJ found that the Plaintiff is not disabled because the Plaintiff can perform significant jobs in the national economy of address clerk, table worker, and cuff folder. AR 772. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1512.

### STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's

decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (citations omitted); *see also Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

In this appeal, the Plaintiff argues that the ALJ made several errors in determining the Plaintiff's RFC, failed to properly consider the Plaintiff's subjective symptoms, and failed to support with substantial evidence the finding at step five that the Plaintiff could perform a significant number of jobs in the national economy. The Court finds that the ALJ's decision is supported by substantial evidence and that there is no basis for remand.

**A.      Residual Functional Capacity**

The RFC is a measure of what an individual can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1). The "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The relevant evidence of the individual's ability to do work-related activities includes the claimant's medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. The determination of a claimant's RFC is a legal decision rather than a medical one. *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)).

*1.      Handling and Fingering*

At step two of the sequential analysis, the ALJ found that the Plaintiff has the severe impairments of "bilateral hand numbness with some paresthesias most consistent with carpal tunnel syndrome (CTS)" and "neuropathy of the bilateral upper extremities," AR 759, and the ALJ included limitations in the RFC for frequent handling and fingering as well as frequent overhead reaching, AR 763. The Plaintiff argues that the ALJ failed to draw a logical bridge between the evidence and this aspect of the RFC, pointing to his use of wrist splits and the findings of Dr. Kamineni. The Court finds that the RFC for frequent handling, fingering, and overhead reaching is supported by substantial evidence and that the ALJ did not err in considering the evidence of record related to this impairment.

First, the Plaintiff argues that the ALJ failed to discuss the Plaintiff's use of wrist splints and the full record of his hand/wrist impairment. This is incorrect. In the RFC analysis, the ALJ acknowledged the Plaintiff's testimony that he has shaking of the hands, problems gripping objects, and difficulty with buttoning and opening jars, AR 763–64, and that he no longer drives, in part, because of his hands, AR 764. The ALJ noted the Plaintiff's testimony that he experiences neuropathy and muscle spasm in both hands, that he has muscle spasms two to three times per night, that medication is somewhat helpful for the spasms, that the neuropathy and spasms constantly affect his ability to lift and grip, that he "uses prescribed hand braces" and has had them since he started using the cane, and that using the cane sometimes bothers his right hand. AR 765. The ALJ considered the Plaintiff's testimony that his doctors have not recommended any further treatment for his hands. *Id.* Finally, the ALJ noted his testimony that he can lift a gallon of milk with two hands, drops objects due to pain and weakness in both hands, and has difficulty with buttons and zippers. *Id.* The Plaintiff does not acknowledge any of the ALJ's extensive discussion of his testimony regarding his hands.

Nor does the Plaintiff recognize that the ALJ's decision specifically analyzed significant other evidence of record related to his upper extremity functioning, as directed by the prior court on remand. *See* AR 766. At step two of the sequential analysis, the ALJ cited progress records noting the Plaintiff's complaints of numbness and cramping of the hands with difficulty opening things such as bottles, which was aggravated by cold weather. AR 759 (citing AR 412 (10F/7), AR 462 (13F/17), AR 539 (14F/19)). The ALJ also noted that bilateral hand x-rays from October 2015 were negative, *Id.* (citing AR 416 (10F/11), AR 492 (13F/47)), but that during physical examination the Plaintiff displayed subjective numbness in the fingers and positive bilateral Phalen's tests. *Id.* (citing AR 413 (10F/8), AR 542 (14F/22)).

Later, in the RFC determination, the ALJ discussed the October 2015 treatment note documenting mild neuropathy per an EMG with no evidence of carpal tunnel syndrome. AR 766 (citing AR 547 (14F/27)). The ALJ also considered the March 2018 consultative examination where the Plaintiff was unable to make a fist with both hands but demonstrated 4/5 grip strength with the bilateral hands and, notably, the ability to perform fine and gross movements on a sustained basis with the ability to button and zip. *Id*. (citing AR 1210 (29F/6)); *see* AR 1207. The ALJ noted that Dr. Kamineni, who performed the consultative examination, opined that the Plaintiff has normal fine motor skills with normal handling of objects. AR 766 (citing AR 1210 (29F/6)). The ALJ then discussed a more recent consultative examination by Dr. Yang in July 2019, where the Plaintiff exhibited tenderness and decreased sensation of the bilateral hands but nonetheless maintained 4/5 grip and upper extremity strength bilaterally and the ability to zip, button, and pick up coins effectively. *Id.* (citing AR 1459 (33F/3)). He also noted that Dr. Yang opined that the Plaintiff can perform fine and gross movements effectively. *Id*. The ALJ then concluded, "This evidence is indicative of the claimant's abilities to use the hands effectively despite his complaints and supports a limitation for frequent, rather than occasional, handling and fingering." *Id*. The ALJ further reasoned, "These examinations were performed more than a year apart and do not demonstrate significant worsening of the claimant's ability to use the hands for fine and gross manipulation." *Id.*

In arguing that the ALJ did not consider all the evidence, the Plaintiff cites only the September 21, 2015 treatment record that provides, under "Plan": "Wearing right wrist splint when he left the office and is to wear it at least at bed time," AR 543 (14F/23), and his testimony that he was prescribed hand braces for both hands and that "anything that's got weight to it I put them on," AR 793. These two pieces of evidence are duplicative of the evidence already analyzed by the ALJ, and the Plaintiff does not argue how the evidence would have changed the

ALJ's analysis. The Court finds that the ALJ thoroughly and properly considered the evidence of record related to the Plaintiff's hand limitations. To the extent the Plaintiff argues that the ALJ erred in the hypothetical posed to the vocational expert because there was no specific reference to the wrist braces, the record supports the limitations to frequent handling, fingering, and overhead reaching, which were included in the hypothetical to the vocational expert. *See* AR 802–03.

Next, the Plaintiff argues that the ALJ erred by giving only "partial weight" to Dr. Kamineni's opinion. In support, the Plaintiff cites Dr. Kamineni's findings that the Plaintiff would have difficulty picking up coins, that he is unable to make a fist with both hands due to arthritis, and that he cannot lift ten pounds over his head. *See* AR 1210. The Plaintiff argues that the ALJ erred by reasoning that "the consultative examiner merely restates the claimant's own report of limitations." AR 770. The argument is not well taken because the ALJ's comment that Dr. Kamineni relied on the Plaintiff's self-reports was specifically made only as to the limitations on sitting, standing, and walking and was not related to his hands and arms. *See* AR 770 ("The consultative examiner merely restates the claimant's own report of limitations on his ability to sit for 15 minutes, stand for 15 minutes, and walk for no blocks before he experiences hip pain, *so the undersigned gives little weight to that portion of the opinion*." (emphasis added)); *see* 1209, 1210. The ALJ reasonably gave Dr. Kamineni's statement partial weight when the ALJ found that the report "suggests that the claimant has manipulative limitations consistent with the ability to perform frequent handling and fingering and does not demonstrate any significant mental deficits" and the Plaintiff "demonstrated 5/5 strength in the bilateral upper and lower extremities with some range of motion limits" during the exam. AR 770. Notably, the ALJ expressly considered Dr. Kamineni's findings about the Plaintiff having difficulty picking up coins and inability to make a fist in the context of reviewing all the objective findings and

opinions of record. AR 767–70. The Plaintiff has not shown that the ALJ erred in considering

Dr. Kamineni's opinion. Notably, no other medical opinion found the Plaintiff limited to less

than frequent handling and fingering.

For all these reasons, the Court finds that the ALJ explained how substantial evidence,

some of which came into existence after the prior ALJ's decision, supports an RFC for frequent

handling and fingering restrictions.

2.    *Wheelchair*

The Plaintiff argues that the ALJ erred by not asking the vocational expert about the

necessity for a wheelchair. The Plaintiff was prescribed a cane in 2015 and uses it regularly to

help with stability. AR 543, 792. The ALJ included the use of the cane in the RFC, which is

supported by the record and was considered by the vocational expert. *See* AR 763, 803–04. The

Plaintiff was also prescribed an electric wheelchair "due to restriction in mobility for long

distances secondary to spinal stenosis and hip arthritis," AR 1463, and at the hearing, he testified

that he uses the wheelchair for distances that he is not comfortable with, AR 801. In the written

decision, the ALJ considered that the Plaintiff was prescribed a wheelchair for distances: "In

September 2018, an electric wheelchair was prescribed due to restriction in mobility *for long

distances* secondary to spinal stenosis and hip arthritis which the sedentary residual functional

capacity accommodates." AR 767 (emphasis added). Thus, the ALJ did not incorporate the need

for a wheelchair in the RFC because he found that the sedentary RFC accommodated the

Plaintiff's need for a wheelchair for distances. The Plaintiff has not offered evidence to show that

he requires a wheelchair to perform the requirements of sedentary work. *See Yurt v. Colvin*, 758

F.3d 850, 857 (7th Cir. 2014) ("As a general rule, both the hypothetical posed to the VE and the

ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the

medical record."). Remand is not required on this issue.

3.      *Concentration, Persistence, or Pace*

The Plaintiff argues that the ALJ did not adequately account for his moderate limitation in maintaining concentration, persistence, or pace, which was supported by Dr. Boen's report, including the conclusion that the Plaintiff's concentration "was significantly below normal." AR 349. Thus, the Plaintiff contends that the hypothetical posed to the vocational expert was inadequate. *See Yurt*, 758 F.3d at 857–58. The Plaintiff's argument fails.

Under the regulations, a "moderate" rating means that a claimant's functioning in the broad mental area "independently, appropriately, effectively, and on a sustained basis is *fair*." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(c) (emphasis added). Claimants whose "functioning in this area independently, appropriately, effectively, and on a sustained basis is *seriously limited*" should be rated as "marked," rather than "moderate." *Id.* § 12.00(F)(2)(d) (emphasis added). At step two, the ALJ found that the Plaintiff has a moderate limitation in concentration, persistence, or pace. AR 762. In support, the ALJ noted that the Plaintiff has difficulty paying attention and handling stress and changes in routine. *Id.* The ALJ also recognized that, during the psychological consultative examination, the Plaintiff could not complete serial sevens and displayed concentration deficits. *Id.*

Based on this moderate limitation, the ALJ crafted an RFC that included the ability to "understand, carry out, and remember simple, routine, and repetitive tasks not at assembly-line type production pace with only occasional, simple work-related decisions" and required that "changes should occur no more than occasionally and be gradually introduced." AR 763. These limitations directly address the functional area of concentration, persistence, or pace. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(E)(3). In formulating the RFC, the ALJ noted several aspects of Dr. Boen's February 2015 report, AR 768 (citing AR 347–50 (Ex. 4F)), but also discussed the longitudinal psychological findings from 2014 through 2019 related to the

Plaintiff's ability to function in this area, including logical thought processes, no distractibility, appropriate judgment and insight, and normal memory. *See* AR 768–69 (citing AR 353 (Ex. 5F) (2014), AR 1195–96 (Ex. 26F/13–14), AR 1286–87 (Ex. 31F/12–13), AR 1294–95 (Ex. 31F/20–21), AR 1908–10 (Ex. 38F/61–63), AR 1917–19 (Ex. 38F/70–72), AR 1926–29 (Ex. 38F/79–82)). Citing these records, the ALJ found that "[m]ental status examinations did not reflect significant deficits in memory, attention, concentration, thought process or thought content." AR 768–69. The Plaintiff does not acknowledge this analysis or explain why the ALJ's conclusion that the RFC assessment adequately address the Plaintiff's symptomology in this area is incorrect.

Moreover, the ALJ specifically considered Dr. Boen's February 2015 conclusion that the Plaintiff "would have trouble being able to concentrate and stay on task on the job" and found that the record supported related restrictions. AR 769–70. However, the ALJ also relied on the February 2015 opinion of the Plaintiff's treating therapist and psychiatrist that the Plaintiff would be able to complete simple work on a consistent basis; the medical opinion from the state agency psychological consultant in 2018, who found the Plaintiff no more than moderately limited in the area of concentration, persistence, or pace and could attend to tasks for a sufficient period to complete tasks; and the medical opinion from the consultative examiner in 2019, who opined that the Plaintiff would not have difficulty maintaining focus and concentration. AR 770–71 (citing AR 356 (Ex. 5F/6); AR 879–80 (Ex. 16A/10–11), 892–93 (Ex. 17A/10–11), 1459 (Ex. 33F/3)). The Plaintiff does not address the ALJ's reliance on these opinions.

The Seventh Circuit Court of Appeals has upheld RFC limitations similar to those assessed by the ALJ in this case for a claimant with a moderate limitation in the area of concentration, persistence, or pace when the record supports the limitations, as the record does in this case. *See, e.g.*, *Dudley v. Berryhill*, 773 F. App'x 838, 842 (7th Cir. 2019); *Pytlewski v. Saul*,

791 F. App'x 611, 616–17 (7th Cir. 2019); *Urbanek v. Saul*, 796 F. App'x 910, 914–15 (7th Cir. 2019) (quoting *Jozefyk*, 923 F.3d at 497). The ALJ tied this aspect of the mental RFC to specific evidence in the record, and the Plaintiff has not shown that the ALJ erred in that assessment.

**B.     The Plaintiff's Subjective Complaints**

When analyzing a disability claim, the ALJ must consider all symptoms, including pain, and the extent to which those "symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a); SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). Subjective allegations of disabling symptoms alone cannot support a finding of disability. SSR 16-3p, 2017 WL 5180304, at *2. The ALJ must consider the claimant's subjective complaints, the evidence from medical and nonmedical sources, the relevant objective medical evidence, medical opinions, and any other evidence of the following factors:

1. the individual's daily activities;
2. location, duration, frequency, and intensity of pain or other symptoms;
3. precipitating and aggravating factors;
4. type, dosage, effectiveness, and side effects of any medication;
5. treatment, other than medication, for relief of pain or other symptoms;
6. any measures taken to relieve pain or other symptoms;
7. other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(a)–(c)(3). "As long as an ALJ gives specific reasons supported by the record," the court will not overturn the ALJ's assessment of the claimant's subjective complaints "unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022).

In this case, the ALJ found the Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms "not entirely consistent" with the evidence of record. AR 765. Over the next three and a half pages, the ALJ discussed the evidence in detail to explain the inconsistencies. *See* AR 766–69. For example, the ALJ cited evidence that showed normal gait, range of motion, strength, and sensation in the lower extremities as well as negative straight leg

raising despite the Plaintiff's complaint of pain. AR 766–69 (citing AR 339 (Ex. 2F/6), 363 (Ex. 6F/5), 394 (Ex. 9F/5), 396 (Ex. 9F/7), 400 (Ex. 9F/11), 400–01 (Ex. 9F/11–12), 419–20 (Ex. 11F/2), 455 (Ex. 13F/10), 565 (Ex. 14F/45), 636–37 (Ex. 15F/49–50), 686 (Ex. 21F/2), 1458 (Ex. 33F/2), 1501 (Ex. 37F/5), 1550 (Ex. 37F/54), 1586 (Ex. 37F/90), 1657 (Ex. 37F/161), 1751 (Ex. 37F/255), 1801 (Ex. 37F/305), 1823 (Ex. 37F/327); *see also* AR 402 (Ex. 9F/13), 551 (Ex. 14F/31), 1506 (Ex. 37F/10); 1512 (Ex. 37F/16), 1517 (Ex. 37F/21), 1531 (Ex. 37F/35)). Although there was evidence showing abnormalities in these areas, the ALJ also discussed the Plaintiff's reported success with conservative treatment modalities as well as the ability to perform light housework and walk short distances. AR 766–69 (AR 344 (Ex. 3F/3), 346 (Ex. 3F/5), 398 (Ex. 9F/9), 407 (Ex. 10F/2), 455 (Ex. 13F/10), 480 (Ex. 13F/35), 491 (Ex. 13F/46), 513–14 (Ex. 13F/68–69), 596 (Ex. 15F/9), 686 (Ex. 21F/2), 1206 (Ex. 29F/2), 1459–60 (Ex. 33F/3–4), 1524 (Ex. 37F/28), 1615 (Ex. 37F/119), 1645 (Ex. 37F/149), 1679 (Ex. 37F/183)); *see also* AR 504 (Ex. 13F/59), 515 (Ex. 13F/70).

With respect to the Plaintiff's upper extremity complaint, the ALJ cited findings of 5/5 strength, preserved fine and gross dexterity, and only mild findings on electrodiagnostic testing. AR 767 (citing AR 344 (Ex. 3F/3), 547 (Ex. 14F/27), 1210 (Ex. 29F/6), 1458–59 (Ex. 33F/2–3), 1501 (Ex. 37F/5)). The ALJ also discussed the Plaintiff's deficits in the upper extremities, such as positive Phalen's test and 4/5 grip strength, AR 767 (citing AR 413 (Ex. 10F/8), 542 (Ex. 14F/22), 557 (Ex. 14F/37), 1210 (Ex. 29F/6), 1459 (Ex. 33F/3), but concluded that such findings did not preclude work based on the totality of the findings, *id.*

As for the Plaintiff's mental functioning, the ALJ concluded that, while the Plaintiff exhibited anxious and depressed appearance during examinations, the remaining mental status findings, such as cooperative behavior, logical thought processes without distractibility, and normal mood, judgment, and insight, as well as documentation of improvement, did not support

14

a finding of disability. AR 768–69 (citing AR 354 (Ex. 5F/4), 368–71 (Ex. 7F/2–5), 585 (Ex. 14F/65), 651–3 (Ex. 18F/1, 3), 733 (Ex. 24F/38), 737 (Ex. 24F/42), 1293–95 (Ex. 31F/19–21), 1848–1929 (Ex. 38F)).

In his brief, the Plaintiff identifies several errors in the ALJ's assessment of his subjective complaints; however, none of them individually or in combination compel a finding that the ALJ's assessment was "patently wrong." *Grotts*, 27 F.4th at 1279. First, the Plaintiff argues that the ALJ erred by not discussing his strong work history, during which he worked steadily, full time for fifteen years, earning $30,000–$38,000 a year. *See* AR 788, 1102. However, "[a]n ALJ is not statutorily required to consider a claimant's work history." *Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016). "Although a consistent work history weighs in favor of a positive credibility finding, it is still just 'one factor among many, and it is not dispositive.'" *Summers*, 864 F.3d at 529 (citation omitted). The ALJ's consideration of the Plaintiff's subjective complaint is supported by substantial evidence; the fact that the ALJ did explicitly discuss the Plaintiff's strong work history in his analysis does not change that finding.

Second, the Plaintiff faults the ALJ for reasoning that the severity of his pain is not supported by the record, in part, because "[h]is hip impairment stems from childhood, so he worked with it for many years." AR 766. The Plaintiff is correct that the medical records show that the current issue is the result of a broken screw from the childhood surgery and that, although he worked with his hip deformity over the years, his pain has significantly worsened over the years. *See* AR 408, 322. However, in finding that the Plaintiff retains the ability to perform sedentary work, *see* AR 766, the ALJ specifically considered the broken screw in his hip, AR 759, the Plaintiff's testimony and medical reports documenting his pain, AR 764, and the assistance he receives from his family performing activities of daily living, AR 764–65. Notably, the Plaintiff's prior work, which he left because of the increasing pain, was performed

at the "medium" exertional level. AR 802. The observation by the ALJ that the Plaintiff worked with his hip impairment for many years does not contradict the finding that the Plaintiff can now perform sedentary work. The Plaintiff has not identified evidence demonstrating that he cannot performing the exertional requirements of sedentary work.

Next, the Plaintiff faults the ALJ for discrediting him based on his refusal to undergo certain treatments, arguing that the ALJ failed to recognize documentation or discuss that the Plaintiff has an extreme phobia of needles and surgery. *See* AR 374, 408, 1192, 1250, 1490. However, the ALJ's focus was on the contradiction in the Plaintiff's hearing testimony and not solely on the failure to undergo treatment: "Contrary to his testimony that his doctors did not recommend other treatment modalities, the record notes that he refused orthopedic consultation, injections in the right hip, lumbar and cervical injections, lab work, and surgical treatment despite his claim of debilitating pain and impaired functioning." AR 766. The Plaintiff fails to acknowledge this inconsistency in his testimony.

Last, the Plaintiff argues that the ALJ erred by relying on the Plaintiff's failure to stop smoking as a basis for finding the severity of his complaints not supported by the record, arguing that the ALJ failed to also find that smoking cessation would restore the Plaintiff's ability to work. *See Shramek v. Apfel*, 226 F.3d 809, 812–13 (7th Cir. 2000) (finding that the ALJ erred by relying on the plaintiff's failure to stop smoking as a basis for finding him not credible because there was no finding that refraining from smoking would have restored the claimant's ability to work (citing *Rousey v. Heckler*, 771 F.2d 1065, 1068 (7th Cir. 1985))). However, in contrast with *Shramek*, where there was no medical evidence linking the plaintiff's pain to smoking, *id.* at 813, in this case, the ALJ explained that the Plaintiff "was repeatedly advised to stop smoking because it exacerbates chronic pain due to vessel constriction and hindrance of blood flow to the affected site," AR 766. The Plaintiff fails to address this factual difference. Moreover, any error

16

by the ALJ in failing to inquire why the Plaintiff did not stop smoking is harmless because, as set forth above, the ALJ has sufficiently identified other factors that support his evaluation of the Plaintiff's subjective symptoms. *See Halsell v. Astrue*, 357 F. App'x 717, 722–23 (7th Cir. 2009) (explaining that not "all of the ALJ's reasons must be valid as long as *enough* of them are" (citing *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009); *Shramek*, 226 F.3d at 811)).

## C.    Step Five Determination: Work that Exists in Significant Numbers

At step five of the sequential analysis, the Commissioner bears the burden of "providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [his] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2); *see Brace v. Saul*, 970 F.3d 818, 820 (7th Cir. 2020). In response to a hypothetical question by the ALJ reflecting the limitations in the RFC, the vocational expert testified that the hypothetical individual could perform the jobs of addressing clerk, with 9,500 jobs nationally, table worker, with 8,500 jobs nationally, and cuff folder, with 3,500 jobs nationally. AR 763, 802–04. The Plaintiff argues that the ALJ's determination at step five that the Plaintiff could perform work that exists in significant numbers is not supported by substantial evidence.

First, the Plaintiff argues that the 21,500 jobs nationally identified by the vocational expert is not a significant number, reasoning that the only way to accurately determine if a number of jobs is "significant" is to consider the number as a percentage of the total jobs in the national economy. *See* Pl. Br. 13–14, ECF No. 13 (citing *Sally S. v. Berryhill*, No. 2:18-CV-460, 2019 WL 3335033, at *11 (N.D. Ind. July 23, 2019) (concluding that 120,350 jobs was not a significant number)); *James A. v. Saul*, 471 F. Supp. 3d 856, 859–60 (N.D. Ind. 2020)). The Plaintiff reasons that, because 21,500 jobs is only .014% of the total 150,606,000 full-time jobs in the United States, the number of jobs identified by the vocational expert is not significant. *Id.*

at 14. Recently, however, the Seventh Circuit examined a plaintiff's citation to *Sally S.*, noting that *Sally S.*, which cited only regional and national numbers, did not account for the Seventh Circuit's decision in *Weatherbee*, in which the Seventh Circuit concluded that 140,000 national jobs was a "significant" number of jobs under step five of the analysis. *Milhem v. Kijakazi*, 52 F.4th 688, 695 (7th Cir. 2022) (citing *Weatherbee v. Astrue*, 649 F.3d 565, 572 (7th Cir. 2011)).

In *Milhem*, Seventh Circuit further explained that "[o]ur circuit's case law does not provide a clear baseline for how many jobs are needed" and that *Weatherbee*, in which the court "concluded that 140,000 jobs in the national economy was 'well above the threshold for significance,' is this court's only guidepost." *Id*. at 696 (quoting *Weatherbee*, 649 F.3d at 572). The court then found that the job figure of 89,000 was supported by substantial evidence and noted that the plaintiff did not "challenge the vocational expert's testimony, which was responsive to the ALJ's questions addressing Milhem's capacity to perform work." *Id.* at 696– 97. In support, the court found that this number was "in accord with the numbers of national jobs held to be significant by other circuits," which included national jobs numbers of 32,000, 25,000, and 10,000. *Id.* (citing *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022) (32,000 national jobs); *Gutierrez v. Com''r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (25,000 national jobs); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (10,000 national jobs); *Weiler v. Apfel*, 179 F.3d 1107, 1110–11 (8th Cir. 1999) (32,000 national jobs)). Here, the vocational expert cited national numbers, and the Court finds that total number of jobs of 21,500 is "in accord" within the range of the number of jobs the Seventh Circuit acknowledged as "significant" in *Milhem*.

The Plaintiff also argues that it is unclear whether the job numbers identified by the vocational expert are the total number of jobs or the number of jobs after the erosion caused by the Plaintiff's use of a cane. However, in response to the ALJ's hypothetical, the vocational

expert stated that he would "cite the jobs and the eroded portion," immediately after which he identified the jobs and numbers cited above. AR 804. There is no ambiguity, and the vocational expert's testimony accounted for the erosion caused by the Plaintiff's cane use when providing the job numbers.

Second, the Plaintiff contends that the ALJ erred by relying on the vocational expert's methodology because the vocational expert did not provide an explanation of how he arrived at the job numbers that meets the substantial evidence bar. For the vocational expert's testimony to constitute substantial evidence, the ALJ must ensure that the job number estimates have a reliable basis. *Ruenger v. Kijakazi*, 23 F.4th 760, 763 (7th Cir. 2022). The estimates must be based on well-accepted sources, and the expert must offer a "reasoned and principled explanation" of his methods. *Id.* (citation omitted). "The expert's explanation must be sufficient to instill some confidence that the estimate was not 'conjured out of whole cloth.'" *Id.* (citation omitted). Nevertheless, the estimate "will be just that—an estimate;" "[t]he VE necessarily must approximate, and there is no way to avoid uncertainty" in estimating the number of any specific job. *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018).

When asked at the hearing by the Plaintiff's attorney about the source of his numbers, the vocational expert responded that he "use[s] [his] own numbers," which are based on "random samplings throughout the area such as labor market surveys." AR 807. He testified that he uses "real labor statistics[, the] total jobs," and "[tries] to break them out of the SOC codes and [does] his] research . . . to come up with a reasonable amount of national jobs." *Id.* At the hearing, the Plaintiff's attorney objected to the testimony. *Id.* The ALJ overruled the objection in the hearing decision. AR 772–73. The ALJ found the vocational expert's explanation for the job numbers to be "reasonable and reliable" because the vocational expert has professional knowledge and experience in job placement, he testified he used his own calculations based on random sampling

19

such as labor market surveys, he used the Bureau of Labor Statistics for total jobs and breaks them out of the Standard Occupational Classification codes, he uses his research to identify reasonable national job numbers, and he has experience that allows him to make these estimates. AR 772, 773. The ALJ also recognized that the regulations direct ALJs to "use vocational experts to determine whether a claimant's work skills can be used in other work and the specific occupations in which they can be used," AR 772 (citing 20 C.F.R. § 404.1566(e)), and that the regulations allow vocational experts to rely on publications of which the Agency has taken administrative notice as well as their own professional judgment and/or other vocational publications, as long as they are reliable, AR 772–73. (citing 20 C.F.R. § 404.1566(d)). The ALJ also reasoned that there was no indication that the jobs identified by the vocational expert were the only ones the Plaintiff could perform under the RFC. AR 772.

Thus, the ALJ specifically found, and the Plaintiff has not shown otherwise, that the vocational expert's testimony was sufficiently reliable to constitute substantial evidence. The finding in *Maples v. Saul*, cited by the Plaintiff, that the vocational expert's testimony was not reliable is distinguishable. In *Maples*, the vocational expert relied solely on a software program and was unable to explain how the software works or why she believed the estimates were reasonable, and the ALJ did not respond to the plaintiff's objection to the vocational expert's job number estimates. No. 1:20-cv-157, 2021 WL 1291766, at *5–6 (N.D. Ind. Apr. 7, 2021).

The ALJ's factual findings as to "the kind and number of jobs available for someone with the applicant's disability and other characteristics," are "'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'" *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Here, the job number estimates came from well-accepted sources, and the vocational expert offered a reasoned and principled explanation for his methodology. *See Ruenger*, 23 F.4th at 763. Substantial evidence supports the ALJ's finding at

step five that the Plaintiff could performs jobs that exist in a significant number in the national economy.

### CONCLUSION

For the reasons stated above, the Court DENIES the relief sought in the Plaintiff's Brief [ECF No. 13] and AFFIRMS the decisions of the Commissioner of the Social Security Administration. The Court DIRECTS the Clerk of Court to enter judgment against the Plaintiff Don Hoskins and in favor of the Defendant Commissioner of the Social Security Administration.

SO ORDERED on December 14, 2022.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT